## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JENNIFER CLAYTON, individually and on behalf of all others similarly situated, | No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| TRANSUNION, LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Jennifer Clayton ("Plaintiff"), individually and on behalf of all others similarly situated, by and through their counsel, bring this Class Action Complaint against Defendant TransUnion, LLC ("TransUnion" or "Defendant"). Plaintiff alleges the following based on information and belief, and based on the investigation of counsel, except as to the allegations specifically pertaining to Plaintiff, which are alleged on personal knowledge.

### INTRODUCTION

1.      Plaintiff and Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendant or their third-party vendors with sensitive Personally Identifiable Information[1] ("PII" or "Private Information") that was impacted in a data breach that Defendant publicly disclosed in August 2025 (the "Data Breach" or the "Breach").

2.      Plaintiff's claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it, and its accompanying responsibility to securely transfer that information.

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

-1-

3.      Defendant is a global credit reporting agency, headquartered in Chicago, Illinois

4.      Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based either on their affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

5.      Defendant recently experienced a cyber incident involving a third-party application serving its U.S. consumer support operations.[2] The unauthorized access resulted in the exposure of consumers Private Information.[3]

6.      Upon information and belief, the following types of Private Information may have been impacted as a result of the Data Breach: names, Social Security numbers, dates of birth, and addresses.

7.      According to the notification Defendant provided to the Attorney General of Maine, the Data Breach began on July 28, 2025, and was not discovered until two days later on July 30, 2025.[4]

8.      On August 26, 2025, nearly a month after being made aware of the Data Breach, Defendant issued a notice of public disclosure.

9.      Defendant failed to take precautions designed to keep individuals' Private Information secure.

10.     Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the Private Information, yet breached their duty by failing to implement or maintain adequate security practices.

11.     The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have

---

[2]  https://www.maine.gov/cgi-bin/agviewerad/ret?loc=2968 (last visited September 12, 2025).
[3]  *Id.*
[4]  https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/3dcd9b7c-bce3 -4685-bffd-f728ce96e2fd.html (last visited September 12, 2025)

lost the ability to control their private information and are subject to an increased risk of identity theft.

12.    Defendant failed to use reasonable security procedures and practice appropriate to the nature of the sensitive, unencrypted information they maintained for Plaintiff and Class Members, causing the exposure of Plaintiff and Class Members' Private Information.

13.    As a result of Defendant's inadequate digital security and notice process, Plaintiff and Class Members' Private Information was exposed to criminals. Plaintiff and the Class Members have suffered, and will continue to suffer, injuries including financial losses caused by misuse of their Private Information; the loss or diminished value of their Private Information as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

14.    Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

15.    Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant for: negligence; unjust enrichment, and breach of implied contract seeking actual and putative damages, with attorneys' fees, costs, and expenses, and appropriate injunctive and declaratory relief.

16.    Plaintiff and Class Members seek to remedy these harms and prevent any future data compromise on behalf of themselves, and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

17.    Plaintiff is a citizen and resident of Yelm, Washington.

18.    Defendant is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 555 West Adams, Chicago, Illinois 60661. Defendant's registered agent is Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, Illinois, 62703.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs. The number of Class Members is numerous, with many members of whom have different citizenships from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

20.    This Court has personal jurisdiction because Defendant maintains its principal place of business in this District, regularly conduct business in this District, and has sufficient minimum contacts in this District.

21.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendant is domiciled in this District and maintains Plaintiff's and Class Members' Private Information in this District.

## FACTUAL ALLEGATIONS

### *TransUnion's Business*

22.    Defendant is a global information and insights company and one of the three major credit reporting agencies.

23.    Defendant requires individuals to provide it with sensitive Private Information, which includes, inter alia, customers' full name, address, Social Security number, and date of birth.

24.     Defendant collected and stored Plaintiff's and the proposed Class Members' Private Information on its information technology computer systems.

25.     Upon information and belief, Defendant made promises and representations to individuals', including Plaintiff and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.

26.     Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access. As part of its business practices, Defendant requires its users and employees to provide sensitive PII.

27.     As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff and the Class Members' Private Information from disclosure to third parties.

### The Data Breach

28.     Defendant recently experienced a cyber incident involving a third-party application serving its U.S. consumer support operations.[5] The unauthorized access resulted in the exposure of consumers Private Information.[6]

29.     Upon information and belief, the following types of Private Information may have been impacted as a result of the Data Breach: names, Social Security numbers, dates of birth, and addresses.

---

[5] https://www.maine.gov/cgi-bin/agviewerad/ret?loc=2968 (last visited September 12, 2025).
[6] *Id*.

30.     According to the notification Defendant provided to the Attorney General of Maine, the Data Breach began on July 28, 2025, and was not discovered until two days later on July 30, 2025.[7]

31.     On August 26, 2025, nearly a month after being made aware of the Data Breach, Defendant issued a notice of public disclosure.

32.     While Defendant did notify Plaintiff and the Class of the Data Breach, Defendant acknowledged that the Data Breach created a present, continuing, and significant risk of identity theft, providing Plaintiff and the Class with credit monitoring and "proactive fraud assistance" services.[8]

33.     Defendant failed to take precautions designed to keep individuals' Private Information secure.

34.     While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

35.     Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

***Data Breaches Are Preventable***

36.      Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing Private Information.

37.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[9]

---

[7] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/3dcd9b7c-bce3-4685-bffd-f728ce96e2fd.html (last visited September 11, 2025).
[8] https://www.maine.gov/cgi-bin/agviewerad/ret?loc=2968 (last visited Sept. 12, 2025).
[9] How to Protect Your Networks from RANSOMWARE, at 3, available at: https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf (last viewed September 12, 2025).

38.     To prevent and detect cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system. Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls, including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[10]

39.     To prevent and detect cyber-attacks or ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates

- Use threat and vulnerability management

- Perform regular audit; remove privileged credentials.

- Prioritize and treat commodity malware infections as potential full compromise.

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely.

---

[10] *Id.* at 3-4.

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords.

**Apply principle of least privilege**

- Monitor for adversarial activities

- Hunt for brute force attempts

- Monitor for cleanup of Event Logs

- Analyze logon events.

**Harden infrastructure**

- Use Windows Defender Firewall

- Enable tamper protection

- Enable cloud-delivered protection

- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[11]

40.    Given that Defendant was storing the sensitive Private Information of individuals, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

41.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the Private Information of, upon information and belief, millions of individuals, including that of Plaintiff and Class Members.

*Defendant Fails to Comply with FTC Guidelines*

42.    The FTC has promulgated numerous guides for businesses which highlight the

---

[11] See Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), available at: https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited September 12, 2025).

importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

43.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal employee information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[12]

44.    The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[13]

45.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

46.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect employee data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential employee data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[12] Protecting Personal Information: A Guide for Business, Federal Trade Commission (2016). Available at   https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information .pdf (last visited September 12, 2025).
[13] Id.

47.     These FTC enforcement actions include actions against companies, like Defendant.

48.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

49.     Defendant failed to properly implement basic data security practices.

50.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access individuals Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

51.     Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of individuals, Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

### Defendant Fails to Comply with FTC Guidelines

52.     As noted above, experts studying cyber security routinely identify companies in possession of Private Information as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

53.     Several best practices have been identified that, at a minimum, should be implemented by companies in possession of Private Information, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive

data. Defendant failed to follow these industry's best practices, including a failure to implement multi-factor authentication.

54.     Other best cybersecurity practices that are standard for companies include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

55.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

56.     These foregoing frameworks are existing and applicable industry standards for companies safeguarding individuals' data, and upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

### *The Effects of the Data Breach on Plaintiff Clayton*

57.     Defendant sent Plaintiff Clayton a notice stating that her PII was exposed in the Data Breach on or around August 26, 2025.

58.     Following the Data Breach, Plaintiff Clayton has experienced a noticeable increase in fraudulent communications, especially phone calls.

59.     Following the Data Breach, Plaintiff Clayton has experienced anomalies with her credit which has resulted in failure to pass credit checks for purposes of securing new housing. This has resulted in approx. $300 of credit check fees and loss of potential housing opportunities.

60.     Plaintiff Clayton has made, and will continue to take, reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to: researching the Data Breach; reviewing credit reports, credit monitoring, and financial account statements for any indications of actual or attempted identity theft or fraud; researching credit monitoring and identity theft protection services offered by Defendant; and dealing with unwanted spam emails and telephone calls.

61.     At the time of this filing, Plaintiff Clayton had spent at least eight hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation.

62.     As a result of the Data Breach, Plaintiff Clayton has suffered emotional distress due to the release of her PII, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her PII for purposes of identity theft and fraud. Plaintiff Mills is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach. In particular, Plaintiff Clayton worries about fraudulent efforts which include, fraudulent lines of credit being taken out in her name and the continuing devastating impact this could have on her credit score and ability to obtain stable housing.

63.     Plaintiff Clayton suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to: (a) damage to and diminution in the value of her PII, a form of property that Defendant obtained from or on behalf of Plaintiff Clayton; (b) violation of her privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft and fraud.

64.     As a result of the Data Breach, Plaintiff Clayton anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff Clayton is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

### *The Effects of the Data Breach on the Class*

65.     Plaintiff's experiences in connection with the breach are typical of those of the Class Members.

66.     Given the sensitive nature of the PII stolen in the Data Breach, hackers have the ability to commit identify theft, financial fraud, and other identity-related fraud against Plaintiff and Class Members now and into the indefinite future.

67.     As a result of the Data Breach, Plaintiff and Class Members will have to take a variety of steps to monitor for and safeguard against identity theft, and they are at a much greater risk of suffering such identity theft. In addition, these victims of the Data Breach are at a heightened risk of potentially devastating financial identity theft. As the Bureau of Justice Statistics reports, identity theft causes its victims out-of-pocket monetary losses and costs the nation's economy billions of dollars every year.[14]

68.     Plaintiff and Class Members have spent and will spend time, money, and effort dealing with the fallout of the Data Breach, including purchasing credit protection services, contacting their financial institutions, checking credit reports, and spending time and effort searching for unauthorized activity.

69.     The PII exposed in the Data Breach is highly coveted and valuable on underground or black markets. A cyber "black market" exists in which criminals openly post and sell stolen consumer information on underground internet websites known as the "dark web," exposing consumers to identity theft and fraud for years to come. Identity thieves can use the PII to: (a) create fake credit cards that can be swiped and used to make purchases as if they were the real credit cards; (b) reproduce stolen debit cards and use them to withdraw cash from ATMs; (c) commit immigration fraud; (d) obtain a fraudulent driver's license or ID card in the victim's name; (e) obtain fraudulent government benefits; (f) file a fraudulent tax return using the victim's information; (g) commit medical and healthcare-related fraud; (h) access financial accounts and

---

[14] *See* U.S. Dept. of Justice, Bureau of Justice Statistics, *Victims of Identity Theft, 2012* (Dec. 2013), http://www.bjs.gov/content/pub/pdf/vit12.pdf (last visited September 12, 2025).

records; and (i) commit any number of other frauds, such as obtaining a job, procuring housing, or giving false information to police during an arrest.

70.     Consumers are injured every time their data is stolen and placed on the Dark Web, even if they have been victims of previous data breaches. Not only is the likelihood of identity theft increased, but the dark web is not like Google or eBay. It is comprised of multiple discrete repositories of stolen information.[15] Each data breach puts victims at risk of having their information uploaded to different dark web databases and viewed and used by different criminal actors.

71.     Exposure of this information to the wrong people can have serious consequences. Identity theft can have ripple effects, which can adversely affect the future financial trajectories of victims' lives. For example, the Identity Theft Resource Center reports that respondents to their surveys in 2018-2020 described that the identity theft they experienced affected their ability to get credit cards and obtain loans, such as student loans and mortgages.[16] For some victims, this could mean the difference between going to college or not, becoming a homeowner or not, or having to take out a high interest payday loan versus a lower-interest loan.

72.     Annual monetary losses from identity theft are in the billions of dollars. According to a Presidential Report on identity theft produced in 2007:

> In addition to the losses that result when identity thieves fraudulently open accounts . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.
>
> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft,

---

[15] *Id.*

[16] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, https://www.idtheftcenter .org/post/the-identity-theft-resource-centers-2021-consumer-aftermath-report-reveals-impacts-on-covid-19-identity-crime-victims/ (last visited August 28, 2025).

for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.[17]

73.     The unauthorized disclosure of Social Security numbers can be particularly damaging because Social Security numbers cannot easily be replaced. To obtain a new number, a person must prove, among other things, that he or she continues to be disadvantaged by the misuse. Thus, under current rules, no new number can be obtained until damage has been done. Furthermore, as the Social Security Administration warns:

> [A] new number probably won't solve all your problems. This is because other governmental agencies (such as the Internal Revenue Service and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.
>
> If you receive a new Social Security number, you shouldn't use the old number anymore.
>
> For some victims of identity theft, a new number actually creates new problems. If the old credit information isn't associated with your new number, the absence of any credit history under your new number may make it more difficult for you to get credit.[18]

56.     According to the Attorney General of the United States, Social Security numbers "can be an identity thief's most valuable piece of consumer information."[19] Indeed, as explained recently:

> The ubiquity of the SSN as an identifier makes it a primary target for both hackers and identity thieves. . . When data breaches expose SSNs, thieves can use these numbers—usually combined with other

---

[17] FTC, *Combatting Identity Theft A Strategic Plan* (April 2007), https://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic-plan/strategicplan.pdf (last visited August 28, 2025).

[18] *Identity Theft and Your Social Security Number* (July 2021), Social Security Administration, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited August 28, 2025).

[19] *Fact Sheet: The Work of the President's Identity Theft Task Force*, DOJ 06-636, 2006 WL 2679771 (Sep. 19, 2006).

pieces of data—to impersonate individuals and apply for loans, housing, utilities, or government benefits. Additionally, this information may be sold on the black market to other hackers.[20]

57.     As the result of the Data Breach, Plaintiff and Class Members are likely to suffer economic loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

      a.  losing the inherent value of their Personal Information;

      b.  costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

      c.  costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

      d.  lowered credit scores resulting from credit inquiries following fraudulent activities;

      e.  costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach; and

      f.  the continued imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal Information being in the possession of one or many unauthorized third parties.

58.     Even in instances where a consumer is reimbursed for a financial loss due to identity theft or fraud, that does not make that individual whole again, as there is typically significant time and effort associated with seeking reimbursement that is not refunded. The Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" relating to identity theft or fraud.[21]

---

[20] Daniel J. Marcus, *The Data Breach Dilemma: Proactive Solutions for Protecting Consumers' Personal Information*, 68 Duke L.J. 555, 564-65 (2018).
[21] E. Harrell, U.S. Department of Justice, *Victims of Identity Theft, 2014* (revised Nov. 13, 2017), http://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited August 28, 2025).

59.     There may also be a significant time lag between when personal information is stolen and when it is actually misused. According to the GAO, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[22]

## CLASS ACTION ALLEGATIONS

60.     Class Definition. Under Civil Rule 23(a) and (b)(3), Plaintiff bring this case as a class action against Defendant on behalf of the Class preliminarily defined as follows:

> All individuals in the United States whose personal information was compromised in the Data Breach disclosed by Defendant in August 2025.

61.     Excluded from the Class are the following: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors, and any judge to whom this case is assigned, as well as his or her staff and immediate family.

62.     Plaintiff reserves the right to amend the Class definition.

63.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements of CR 23.

64.     Numerosity. Upon information and belief the proposed Class consists of approximately 4,461,511 members—far too many to join in a single action.

65.     Ascertainability. Class Members are readily identifiable from information in Defendant's possession, custody, or control.

66.     Typicality. Plaintiff's claims are typical of Class Members' claims, as each arise from the same Data Breach, the same alleged negligence of and/or statutory violations by Defendant, and the same unreasonable manner of notifying individuals regarding the Data Breach.

---

[22] U.S Government Accountability Office Report to Congressional Requesters, *Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown* (June 2007), http://www.gao.gov/new.items/d07737.pdf (last visited August 28, 2025).

67. <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the proposed Class. Plaintiff's interests do not conflict with those of the Class. Plaintiff has retained counsel experienced in complex class action litigation and data privacy to vigorously prosecute this action on behalf of the Class, including in the capacity as lead counsel.

68. <u>Commonality</u>. Plaintiff and Class Members' claims raise predominantly common factual and legal questions that can be answered for all Class Members through a single class-wide proceeding. For example, to resolve any Class Member's claims, it will be necessary to answer the following questions: (a) Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the PII compromised in the Data Breach; (b) Whether Defendant's conduct was negligent; and (c) Whether Plaintiff and the Class are entitled to damages and/or injunctive relief.

69. In addition to satisfying the prerequisites of CR 23(a), Plaintiff satisfies the requirements for maintaining a class action under CR 23(b). Common questions of law and fact predominate over any questions affecting only individual Class Members, and a class action is superior to individual litigation or any other available methods for the fair and efficient adjudication of the controversy. The damages available to individual plaintiffs are insufficient to make litigation addressing Defendant's privacy practices economically feasible in the absence of the class action procedure.

70. In the alternative, class certification is appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the members of the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
*Claim of Relief for Plaintiff and the Class and Against Defendant*

71. Plaintiff incorporates by reference and realleges all foregoing factual allegations set forth above in paragraphs 1 through 70 as though fully set forth herein.

72. Defendant knowingly collected, came into possession of, and maintained Plaintiff and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

73. Defendant failed to inform Plaintiff and the Class that its systems were inadequate to safeguard sensitive PII and that transferring PII could lead to cybercriminals gaining access to sensitive PII. Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff and Class Members' Private Information.

74. The sensitive nature of the PII and its economic value to hackers necessitated security practices and procedures sufficient to prevent unauthorized access to the PII.

75. Defendant failed to implement and maintain adequate security practices and procedures to prevent the Data Breach.

76. Defendant likewise failed to test, update, and patch (including curing known vulnerabilities) its systems as necessary.

77. It was reasonably foreseeable to Defendant that its failure to implement and maintain reasonable security procedures and practices would leave the sensitive PII in its systems vulnerable to breach and could thus expose the owners of that information to harm.

78. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that its systems and networks, those belonging to its third-party vendors, and the personnel responsible for them, adequately protected individuals' Private Information.

79. Defendant's duty of care arose as a result of its knowledge that individuals trusted Defendant to protect their confidential data that they provided to it or its third-party vendors. Only Defendant was in a position to ensure that its own protocols were sufficient to protect against the harm to Plaintiff and the Class from a data breach of its own systems or third-party vendors.

80.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

81.     Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff and Class Members' Private Information.

82.     The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff and Class Members' Private Information.

    b.  Failing to adequately monitor the security of their networks and systems; and

    c.  Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

83.     Defendant also had a duty to use reasonable care in protecting confidential data because it committed to comply with industry standards for the protection of PII and committed to the public to protect the privacy of information the public provided Defendant.

84.     Defendant knew, or should have known, of the vulnerabilities in its security practices and procedures, and the importance of adequate security to students and the owners of sensitive data. Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the Private Information within Defendant's possession might have been compromised and precisely the type of information compromised.

85.     Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the National Institute of Standards and Technology's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff and Class Members' Private Information. In violation of the FTC guidelines, inter alia, Defendant did not protect the Private Information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer

networks; lacked the requisite understanding of its networks' vulnerabilities; and failed to implement policies to correct security issues.

86.     It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff and Class Members' Private Information would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

87.     It was foreseeable that the failure to adequately safeguard Plaintiff and Class Members' Private Information would result in injuries to Plaintiff and Class Members. Plaintiff and the Class have suffered harm as a result of Defendant's negligence. These victims suffered diminished value of their sensitive PII. Plaintiff and the Class also lost control over the PII exposed, which subjected each of them to a greatly enhanced risk of identity theft, medical identity theft, credit and bank fraud, Social Security fraud, tax fraud, and myriad other types of fraud and theft, in addition to the time and expenses spent mitigating those injuries and preventing further injury.

**SECOND CAUSE OF ACTION**
**UNJUST ENRICHMENT**
***(Claim of Relief for Plaintiff and the Class and Against Defendant)***

88.     Plaintiff incorporates by reference and realleges all foregoing factual allegations set forth above in paragraphs 1 through 70 as though fully set forth herein.

89.     Plaintiff and Class Members conferred a benefit upon Defendant by providing Defendant with their Private Information.

90.     Defendant appreciated or had knowledge of the benefits conferred upon themselves by Plaintiff. Defendant also benefited from the receipt of Plaintiff and Class Members' Private Information.

91.     Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff and the Class Members' Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and the proposed Class

would not have provided their Private Information to Defendant had they known Defendant would not adequately protect their Private Information.

92.     Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by them because of their misconduct and the Data Breach they caused.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT
### (*Claim of Relief for Plaintiff and the Class and Against Defendant*)

93.     Plaintiff incorporates by reference and realleges all foregoing factual allegations set forth above in paragraphs 1 through 70 as though fully set forth herein.

94.     Plaintiff and the Class provided and entrusted their Private Information to Defendant. Plaintiff and the Class provided their Private Information to Defendant as part of Defendant's regular business practices.

95.     In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen, in return for the business services provided by Defendant. Implied in these exchanges was a promise by Defendant o ensure that the Private Information of Plaintiff and Class Members in its possession was secure.

96.     Pursuant to these implied contracts, Plaintiff and Class Members provided Defendant with their Private Information. In exchange, Defendant agreed to, among other things, and Plaintiff and the Class understood that Defendant would: (1) provide services to Plaintiff sand Class Members'; (2) take reasonable measures to protect the security and confidentiality of Plaintiff and Class Members' Private Information; and (3) protect Plaintiff and Class Members' Private Information in compliance with federal and state laws and regulations and industry standards.

97.     .Implied in these exchanges was a promise by Defendant to ensure the Private Information of Plaintiff and Class Members in their possession was only used to provide the

agreed-upon reasons, and that Defendant would take adequate measures to protect Plaintiff and Class Members' Private Information.

98.     A material term of this contract is a covenant by Defendant that it takes reasonable efforts to safeguard that information. Defendant breached this covenant by allowing Plaintiff and Class Members' Private Information to be accessed in the Data Breach.

99.     Indeed, implicit in the agreement between Defendant and Plaintiff and Class Members was the obligation that both parties would maintain information confidentially and securely.

100.     These exchanges constituted an agreement and meeting of the minds between the parties. These exchanges constituted an agreement and meeting of the minds between the parties.

101.     When the parties entered into an agreement, mutual assent occurred. Plaintiff and Class Members would not have disclosed their Private Information to Defendant but for the prospect of utilizing Defendant services. Conversely, Defendant presumably would not have taken Plaintiff and Class Members' Private Information if they did not intend to provide Plaintiff and Class Members with its services.

102.     Defendant was therefore required to reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure and use.

103.     Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their Private Information.

104.     Defendant breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff and Class Members' Private Information.

105.     Defendant's failure to implement adequate measures to protect the Private Information of Plaintiff and Class Members violated the purpose of the agreement between the parties.

106.    As a proximate and direct result of Defendant's breaches of its implied contracts with Plaintiff and Class Members, Plaintiff and the Class Members suffered damages as described in detail above.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the Class, request that the Court enter judgment against Defendant as follows:

A.    An order certifying the proposed Class pursuant to Civil Rule 23 and appointing Plaintiff and their counsel to represent the Class;

B.    An order awarding Plaintiff and Class Members monetary relief, including actual damages and penalties;

C.    An order awarding injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as necessary to protect the interests of Plaintiff and Class Members, including, but not limited to, an order:

    i.    Prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.    Requiring Defendant to protect, including through encryption, all data collected through the course of their businesses in accordance with all applicable regulations, industry standards, and state or local laws;

    iii.    Requiring Defendant to delete, destroy, and purge the PII of Plaintiff and Class Members unless Defendant can provide the Court with reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

    iv.    Requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

    v.    Prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vi.     Requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.     Requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.     Requiring Defendant to audit, test, and train their security personnel regarding any new or modified procedures;

ix.     Requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.     Requiring Defendant to conduct regular database scanning and securing checks;

xi.     Requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting the PII of Plaintiff and Class Members;

xii.     Requiring Defendant to routinely and continually conduct internal training and education, and, on an annual basis, to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.     Requiring Defendant to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees'

compliance with Defendant's policies, programs, and systems for protecting PII;

xiv. Requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. Requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential PII to third parties, as well as the steps affected individuals must take to protect themselves;

xvi. Requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

xvii. For a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the Class, and to report any deficiencies with compliance of the Court's final judgment;

D. An award of damages, including actual, nominal, statutory, consequential, and punitive damages, as allowed by law;

E. An award of attorney's fees, costs, and expenses, as permitted by law;

F. An award of pre-judgment and post-judgment interest, as permitted by law;

G. Leave to amend this Complaint to conform to the evidence produced at trial; and

H. Such other and further relief as this Court may deem just and proper.

///

///

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

DATED this 15th day of September 2025.                    Respectfully Submitted,

*/s/ M. Anderson Berry*
M. Anderson Berry (6347974)
Gregory Haroutunian*
Brandon P. Jack*
Andrew Snyder*
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Fax: (916) 924-1829
*aberry@justice4you.com*
*gharoutunian@justice4you.com*
*bjack@justice4you.com*
*asnyder@justice4you.com*

Timothy W. Emery*
Patrick B. Reddy*
Brook E. Garberding*
Paul Cipriani*
**EMERY REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Telephone: (206) 442-9106
Fax: (206) 441-9711
Email: emeryt@emeryreddy.com
Email: reddyp@emeryreddy.com
Email: brook@emeryreddy.com
Email: paul@emeryreddy.com

*\*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff and Proposed Class*